2018 IL App (1st) 150209

FIRST DISTRICT
FIFTH DIVISION
August 10, 2018

No. 1-15-0209

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 12 CR 4100 |
| MARK JOHNSON, | ) ) | |
| Defendant-Appellant. | ) ) ) ) | Honorable James B. Linn, Judge Presiding. |

PRESIDING JUSTICE REYES delivered the judgment of the court, with opinion.
Justices Hall and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Mark Johnson, was originally indicted on seven counts of forgery. Following

a jury trial in the circuit court of Cook County, he was convicted of five forgery counts (720

ILCS 5/17-3(a)(3) (West 2012)) and sentenced to five years' imprisonment. On appeal,

defendant argues the following errors occurred during his trial and sentencing: (1) the trial court

failed to ask the prospective jurors whether they understood and accepted the principles

enumerated in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), (2) the State proceeded to

trial on six nol-prossed counts that had never been recharged, (3) the prosecutor engaged in

inappropriate rebuttal closing argument, and (4) the trial court imposed a sentence based on

misrepresentations by the prosecutor and an inaccurate presentence investigation report. Defendant further maintains that the State's evidence was insufficient to prove him guilty of forgery with intent to deliver beyond a reasonable doubt. For the reasons that follow, we conclude the State failed to prove beyond a reasonable doubt that defendant possessed the requisite intent to be found guilty of violating section 17-3(a)(3) of the Criminal Code of 2012 (Code) (720 ILCS 5/17-3(a)(3) (West 2012)) and therefore reverse the judgment of the circuit court.

¶ 2                                                BACKGROUND

¶ 3      On February 27, 2012, defendant was indicted on seven counts of forgery in connection with his intent to deliver numerous counterfeit bills that were discovered on his person incident to a February 2, 2012, traffic stop. Prior to trial and after failing to succeed on his motion to suppress, the State and defendant engaged in a conference pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012) and defendant pled guilty to count I of the indictment. Upon entering a finding of guilt on count I, the State nol-prossed the remaining six counts and the trial court sentenced defendant to 42 months' imprisonment.

¶ 4      Shortly thereafter, defendant filed a motion to withdraw his guilty plea, alleging his defense counsel encouraged him to plead guilty against defendant's own judgment. The trial court granted defendant's motion and set the matter for trial. No mention thereafter was made by either party or the trial court regarding the six nol-prossed counts, and the State did not move to vacate the *nolle prosequi* order.

¶ 5      Without objection by defendant, the matter proceeded to a jury trial on the seven forgery counts originally filed. A jury was selected on November 5, 2014. At that time, Illinois Supreme Court Rule 431(b) required the trial court to ask each potential juror, either individually or as a

group, whether he or she understood and accepted the propositions that defendant was presumed innocent of the charge, the State had the burden of proving him guilty beyond a reasonable doubt, defendant was not required to present any evidence, and his decision against testifying could not be held against him. Ill. S. Ct. R. 431(b) (eff. July 1, 2012). Prior to the individual *voir dire* of each venire panel member, the trial judge admonished the entire group of potential jurors collectively regarding each of the principles set forth in the rule; however, instead of asking whether they "understood and accepted" each of the principles, the trial court asked, "Is there anybody who has a disagreement or problem with that?"

¶ 6       A jury was selected and the trial commenced with Chicago police officers Aaron Cunningham and Kevin Culhane, as well as special agent Richard Pillsbury of the Secret Service, testifying on behalf of the State (collectively, law enforcement officials). Defendant presented no witnesses. The following facts were adduced.

¶ 7       On February 2, 2012, at 1 p.m. special agent Pillsbury and his partner Shannon McDowell, along with Chicago police officers Cunningham and Culhane went to the 2800 block of West Polk Street to investigate suspected counterfeit activity. The Chicago Police Department had previously become aware of such activity through a series of 911 calls. As the agents and officers were setting up surveillance, they observed a vehicle matching the description previously provided from the 911 calls, a maroon Chrysler Town & Country minivan. The law enforcement officials, traveling together in an unmarked police vehicle, were following the minivan when Officer Cunningham observed the minivan roll through a stop sign. The law enforcement officials curbed the minivan. Officer Cunningham approached the driver and requested his driver's license, to which the driver (identified as defendant in court) indicated that his license had been suspended. Upon learning this, Officer Cunningham requested defendant

exit the vehicle and placed him in custody. Officer Cunningham then performed a protective search of defendant. He discovered in defendant's left pocket $246 in genuine United States currency. From defendant's right pocket, $930 in counterfeit bills were recovered: five $50 bills with serial number EG49117834A, one $50 bill with serial number JL0055295A, 24 $20 bills with serial number JB79032495A, seven $20 bills with serial number JD79032494A, and one $10 bill with serial number JF33944953A.

¶ 8    Two of the genuine bills recovered from defendant's left pocket, a $50 bill and a $20 bill, were identified by Agent Pillsbury as being the "parent notes" to some of the counterfeit currency discovered. According to Agent Pillsbury, who testified as an expert in detecting and locating counterfeit currency, "parent notes" are the genuine notes utilized to make the counterfeit currency. As testified to by Agent Pillsbury, in this instance these parent notes were readily identifiable because they shared the same serial numbers as those on certain of the counterfeit bills. No objection was raised as to Agent Pillsbury's testimony.

¶ 9    A receipt for a "HP 61/61 Combo Ink Cartridge" stamped 9:09 a.m. on February 2, 2012, was also recovered from defendant's person and entered into evidence. It indicated the purchase was made with $45 cash at a Walgreens located on the 2000 block of East 95th Street in Chicago. Agent Pillsbury, that same afternoon, visited the Walgreens in question to determine if any counterfeit currency had been passed off and to obtain any potential surveillance video of the individual who purchased the printer ink cartridge. Agent Pillsbury performed a search of the cash registers for counterfeit bills, but none were discovered. Agent Pillsbury was informed by a Walgreens employee that some of the funds received that day had been placed inside the store safe. Agent Pillsbury, however, was not provided access to the funds inside the safe.

¶ 10    Later that evening, the law enforcement officials went to an apartment located on the

4

2400 block of West Madison Street and met with defendant's daughter, Shanic Johnson (Shanic), who resided therein. Shanic provided the consent necessary to search her residence. The officers did not search the entire residence but focused solely on the rear bedroom where defendant had been residing. Officers Cunningham and Culhane testified that, pursuant to their search, they recovered: a 3-in-1 Canon laser printer, scanner, and copier; a can of hair spray; four counterfeit $50 bills; and all purpose printer paper. Two bills of genuine currency were also recovered which contained the same serial numbers as some of the counterfeit notes which had previously been discovered in defendant's pocket.

¶ 11     In addition to this testimony, Agent Pillsbury opined as an expert that the $930 recovered from defendant's right pocket and the bills recovered from the bedroom consisted of counterfeit currency and defendant was not given the permission or authority to manufacture these bills. Additionally, the paper recovered from the rear bedroom was consistent with the type of paper utilized in manufacturing the counterfeit currency. Agent Pillsbury further opined that a "trademark" of most counterfeiters is to carry genuine currency in one pocket and counterfeit currency in another. According to Agent Pillsbury, possession of the parent note and the counterfeit note suggests that the person is either the manufacturer of the counterfeit or knows the manufacturer of the counterfeit currency. In regards to the hairspray recovered from the rear bedroom, Agent Pillsbury opined that individuals who manufacture and pass off counterfeit bills spray the bills with hair spray to defeat the counterfeit detecting pen used at retail establishments. It is therefore common for agents to find hair spray with the tools and mechanisms used to create counterfeit currency.

¶ 12     On cross-examination, Agent Pillsbury testified that the $50 counterfeit bills discovered at Shanic's apartment did not have the same serial number as the parent notes found on

defendant. Agent Pillsbury further testified that no fingerprint testing was conducted on the printer, paper, or hairspray recovered from Shanic's residence. In addition, he testified that the printer cartridge purchased at Walgreens was not recovered and he did not know if it could be used in the Canon 3-in-1 printer.

¶ 13    After hearing closing arguments, the jury deliberated and ultimately found defendant guilty of five of the seven forgery counts (counts I through V). The jury found defendant not guilty of counts VI and VII of the original indictment, which pertained to the $50 bills found in the rear bedroom of Shanic's apartment. Defendant filed a motion for a new trial, which was denied.

¶ 14    The matter proceeded to a sentencing hearing where defendant represented himself *pro se*. The State presented evidence in aggravation, including representing that defendant has

    "quite [a] lengthy [criminal history], ranging from armed robberies back in the '70s all
    the way up to forgery that he's in custody now in La Salle County, 13 CF 489, a forgery
    from 2012, a forgery from 2009, possession of a controlled substance, 2006, unlawful use
    of a weapon from 1993."

The State requested the maximum sentence. The trial court also reviewed a presentence investigation report, which in pertinent part, indicated that defendant had been convicted of forgery in 2009 and 2012. Defendant offered no evidence in mitigation. After considering the evidence presented, the trial court merged the five forgery counts and sentenced defendant to five years' imprisonment on count I, to be served consecutively to his La Salle County conviction. This appeal followed.

¶ 15                                    ANALYSIS

¶ 16    On appeal, defendant argues the following errors occurred during his trial and sentencing,

6

which warrant a new trial: (1) the trial court failed to ask the prospective jurors whether they understood and accepted the principles enumerated in Rule 431(b), (2) the State proceeded to trial on six nol-prossed counts that had never been recharged, (3) the prosecutor engaged in inappropriate rebuttal closing argument, and (4) the trial court imposed a sentence based on misrepresentations by the prosecutor and an inaccurate presentence investigation report that he had two prior felony convictions for forgery. Because the ultimate outcome of this case rests on whether or not the evidence was sufficient to convict defendant, we first turn to address whether the State proved defendant guilty of forgery (720 ILCS 5/17-3(a)(3) (West 2012)) beyond a reasonable doubt.

¶ 17     Defendant contends the State failed to establish with sufficient evidence that he had the requisite intent to be found guilty beyond a reasonable doubt of the offense of forgery (*id.*). Specifically, defendant argues the evidence established no more than his mere possession of the counterfeit bills and does not support a reasonable inference that he had the specific intent to deliver the currency. In response, the State maintains that the circumstantial evidence was sufficient to establish defendant's intent to deliver where he "had [a] large amount of counterfeit currency in his pocket as he went out in public, where he could very easily tender or deliver it."

¶ 18     The due process clause of the fourteenth amendment to the United States Constitution safeguards an accused from conviction in state court except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979); *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). A reviewing court will not retry a defendant when

considering a sufficiency of the evidence challenge. *People v. Smith*, 185 Ill. 2d 532, 541 (1999).

The trier of fact is best equipped to judge the credibility of witnesses, and due consideration must

be given to the fact that it was the jury that observed and heard the witnesses. *Wheeler*, 226 Ill.

2d at 114-15. Accordingly, a jury's finding concerning credibility is entitled to great weight. *Id.*

at 115. Although the trier of fact is responsible for assessing the credibility of the witnesses and

weighing the testimony, the jury's determination is not conclusive. *Smith*, 185 Ill. 2d at 542.

Rather, we will reverse a conviction where the evidence is so unreasonable, improbable, or

unsatisfactory as to create a reasonable doubt of defendant's guilt. *Wheeler*, 226 Ill. 2d at 115.

¶ 19    The State maintains that it proved defendant's intent based on circumstantial evidence.

Circumstantial evidence is proof of facts or circumstances that give rise to reasonable inferences

of other facts that tend to establish guilt or innocence of the defendant. *People v. Saxon*, 374 Ill.

App. 3d 409, 417 (2007). This court has recognized that a criminal conviction may be based

solely on circumstantial evidence. *People v. Brown*, 2013 IL 114196, ¶ 49. The same standard of

review applies whether the evidence is direct or circumstantial. *Id.* Circumstantial evidence is

sufficient to sustain a criminal conviction, provided that such evidence satisfies proof beyond a

reasonable doubt of the elements of the crime charged. *People v. Jackson*, 232 Ill. 2d 246, 281

(2009). The jury does not need to be satisfied beyond a reasonable doubt as to each link in the

chain of circumstances. *People v. Hall*, 194 Ill. 2d 305, 330 (2000).

¶ 20    Defendant here was charged with forgery pursuant to section 17-3(a)(3) of the Code (720

ILCS 5/17-3(a)(3) (West 2012)), which provides that a person commits forgery when, with intent

to defraud, he knowingly possesses, with intent to issue or deliver, any such document knowing

it to have been thus made or altered.

¶ 21    As set forth by our supreme court in *Brown*:

"The gist of forgery is the intent to defraud. [Citations.] The State must establish that a defendant had the intent to defraud by making or altering, possessing with intent to deliver, or issuing or delivering any document apparently capable of defrauding another. [Citations.] By use of the disjunctive 'or,' the forgery statute recognizes that these acts can be committed separately, and ensures that a defendant is properly charged based on the stage of the process the defendant occupies." *Brown*, 2013 IL 114196, ¶ 38.

¶ 22 The forgery statute further provides that

" '[w]ith intent to defraud' means to act knowingly, and with the specific intent to deceive or cheat, for the purpose of causing financial loss to another or bringing some financial gain to oneself, regardless of whether any person was actually defrauded or deceived. This includes an intent to cause another to assume, create, transfer, alter, or terminate any right, obligation, or power with reference to any person or property." 720 ILCS 5/17-0.5 (West 2012).

¶ 23 Defendant maintains that the State produced no evidence, direct or circumstantial, that evidences his specific intent to defraud or his intent to deliver the counterfeit currency. The State, in contrast, argues that it established defendant's intent through circumstantial evidence. Specifically, the State asserts the following circumstantial evidence proves defendant's intent beyond a reasonable doubt: (1) the amount of counterfeit currency found on defendant's person; (2) the fact the counterfeit currency was in a different pocket than his genuine currency; (3) defendant's possession of two parent notes for the counterfeit currency; (4) the Walgreens receipt for a cash purchase of printer ink; and (5) the printer, paper, and hairspray discovered at defendant's residence.

¶ 24 We agree with defendant that the State failed to meet its burden of proof in regards to

9

defendant's intent to deliver. See *Brown*, 2013 IL 114196, ¶ 52 ("the State bears the burden of proving beyond a reasonable doubt each element of a charged offense and the defendant's guilt"). In forgery cases, proof must often be by circumstantial evidence. *People v. Baylor*, 25 Ill. App. 3d 1070, 1074 (1975) (considering intent within the context of section 17-3(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, ¶ 17-3(a)(2))). However, proof of intent to deliver within the context of section 17-3(a)(3) of the Code has not been expressly considered by our courts. Generally, intent in forgery cases may be inferred from the facts and circumstances surrounding the transaction. See *People v. Carr*, 225 Ill. App. 3d 170, 176 (1992) (considering intent to defraud in regards to section 17-3); *People v. Church*, 366 Ill. 149, 158 (1937) (considering proof of venue in a forgery case); *Baylor*, 25 Ill. App. 3d at 1074. Consequently, this issue involves the examination of the nature and quantity of circumstantial evidence necessary to support an inference of intent to deliver. Thus, it follows that such a determination is made on a case-by-case basis. See *People v. Blan*, 392 Ill. App. 3d 453, 457 (2009). We further observe that when reviewing the sufficiency of the evidence we must consider *all of the evidence* in the light most favorable to the prosecution. *Wheeler*, 226 Ill. 2d at 117. This, however, means that our review must include consideration of all of the evidence, not just the evidence convenient to the State's theory of the case. *Id.*

¶ 25    As there are no forgery cases on point regarding intent to deliver, we turn to consider *People v. Robinson*, 167 Ill. 2d 397 (1995), wherein our supreme court examined the sufficiency of the evidence in regards to a conviction of possession of a controlled substance with intent to deliver. In *Robinson*, our supreme court set out factors to consider in order to ultimately determine whether a defendant had the requisite intent to deliver with respect to controlled substance prosecutions. *Id.* at 408. The nonexclusive factors the court found to be probative of

the intent to deliver included (1) whether the quantity of the controlled substance in the defendant's possession is too large to be viewed as being for personal consumption; (2) the high purity of the drug confiscated; (3) the possession of weapons; (4) the possession of large amounts of cash; (5) the possession of police scanners, beepers, or cellular telephones; (6) the possession of drug paraphernalia; and (7) the manner in which the substance is packaged. *Id.* We observe that no such list exists in our case law regarding a defendant's intent to deliver within the context of the forgery statute. Yet, we do find that in cases involving an intent to deliver under section 17-3(a)(3), *Robinson* teaches us to consider the totality of the circumstances surrounding (1) the arrest of a defendant, (2) the defendant's possession of the counterfeit bills, and (3) the possession of any other evidence discovered as a result of searches conducted by the law enforcement officials incident to that arrest. With this guidance we will now turn to so examine the nature and quality of circumstantial evidence presented at trial.

¶ 26    We first consider the circumstances surrounding defendant's arrest. The counterfeit bills were discovered incident to a traffic stop after the law enforcement officials had observed defendant exit an apartment building and enter his vehicle. Defendant's vehicle, after rolling through a stop sign, was curbed in a residential area (the corner of South Francisco Avenue and West Lexington Street in Chicago). The State produced no evidence that defendant was anywhere near a location where he could deliver the counterfeit bills. Nor was there any evidence that defendant was en route to participate in such an exchange. In fact, there was no direct or circumstantial evidence indicating defendant passed off or attempted to pass off the counterfeit currency at any point in time while he was being observed by the law enforcement officials. In addition, the evidence demonstrated that, when defendant was pulled over by the law enforcement officials, he admitted that he was driving while his license was suspended. This

admission then led to defendant's arrest and the search of his person. The fact defendant was candid during this encounter suggests that he understood that his mere possession of the counterfeit currency was not a criminal act. Therefore, we cannot say that the circumstances surrounding defendant's arrest give rise to a reasonable inference that he intended to deliver the counterfeit currency.

¶ 27 Second, we look to the facts surrounding defendant's possession of the counterfeit bills, *i.e.*, where the bills were discovered, how they were being held by defendant, and the amount. Prior to examining these facts, however, we observe that mere possession of a forged document does not lead to an inference of criminal intent as a matter of law. *People v. Beacham*, 358 Ill. 373, 377 (1934). Here, the counterfeit was discovered on defendant's person, inside his pants pocket. The State asserts the fact defendant kept the counterfeit bills on his person allowed the jury to reasonably infer defendant's criminal intent. The fact the counterfeit bills were being held in a pocket separate from defendant's genuine currency, however, is not dispositive of his intent to deliver. While Agent Pillsbury testified that it was a "trademark" of a counterfeiter to keep counterfeit funds and genuine funds in separate pockets, that fact can also cut the other way, *i.e.*, that defendant kept his money apart from the counterfeit currency so that he would *not* pass it off.

¶ 28 The State further argues that the sheer amount of counterfeit currency in defendant's possession is evidence of defendant's intent. During oral argument, the State was asked whether there were any forgery cases in which the reviewing court considered the amount of funds as circumstantial evidence of intent to deliver. The State responded that there were not but instead analogized the facts of the present case to those where the defendants were found guilty of possession of a controlled substance with intent to deliver. In those cases, the State argued, intent

can be proven based on the quantity of the drugs discovered in the defendant's possession. See

*Robinson*, 167 Ill. 2d at 408; *People v. White*, 221 Ill. 2d 1, 16 (2006). Yet, the *Robinson* court

focused on "whether the quantity of controlled substance in defendant's possession is *too large*

*to be viewed as being for personal consumption*." (Emphasis added.) *Robinson*, 167 Ill. 2d at

408. The *Robinson* court expressed that the quantity factor was influenced by the fact that "The

Illinois legislature has clearly expressed its intent to punish 'the illicit traffickers or profiteers

*** who propagate and perpetuate the abuse of such substances' more severely than those

individuals who possess narcotics for personal use." *Id.* (quoting 720 ILCS 570/100 (West

1992)). No such considerations are present here. Moreover, unlike the offense of possession of a

controlled substance with intent to deliver, there is no statutory requirement regarding the

minimum amount of counterfeit funds that need to be discovered in a defendant's possession in

order to find him guilty of forgery. See *id.* at 410; 720 ILCS 5/17-3 (West 2012).

¶ 29    While the controlled substance cases relied on by the State are not analogous to the issue

at hand, the amount of counterfeit funds discovered can be relevant circumstantial evidence of a

defendant's intent to deliver. In light of this record, however, carrying $930 in counterfeit bills is

a neutral factor. Had defendant been apprehended while engaging in a retail transaction for an

item of that approximate price, the amount of counterfeit funds discovered might cut in favor of

the State, but, in the context of this case, carrying $930 alone is not in and of itself indicative of

an intent to deliver. See *Beacham*, 358 Ill. at 377.

¶ 30    Finally, we consider the other relevant evidence discovered incident to defendant's arrest.

In searching defendant's person, law enforcement officials recovered two "parent notes" and a

receipt from Walgreens for printer ink. At defendant's residence, the law enforcement officials

recovered a Canon 3-in-1 printer, multipurpose printer paper, and hairspray. The State maintains

that defendant's possession of all these items, which can be used to manufacture counterfeit currency, "suggests far more than mere possession of counterfeit currency." While it may be that these items suggest defendant manufactured the counterfeit currency, we observe that defendant was not charged with manufacturing counterfeit bills under section 17-3(a)(1) of the Code. See 720 ILCS 5/17-3(a)(1) (West 2012) (an individual commits forgery when, with the intent to defraud, he or she knowingly *makes* a false document that is apparently capable of defrauding another). Indeed, defendant was charged only with possession of documents, with intent to issue or deliver, knowing it to have been thus made or altered. *Id.* § 17-3(a)(3). In regard to the parent notes, Agent Pillsbury testified that parent notes recovered were the legal tender from which the counterfeit bills were derived. While defendant's possession of the parent notes would be extremely relevant under section 17-3(a)(1) of the Code, in this instance the possession of the parent notes is more dispositive of his intent to defraud and less so of his intent to deliver. Similarly, defendant's possession of the Canon 3-in-1 printer and the multipurpose printer paper is more probative of his intent to defraud rather than his intent to deliver.

¶ 31    As for the Walgreens receipt, the State asserts that it supports the inference that defendant made a purchase earlier on the day he was arrested. Notably, the State does not argue that the Walgreens receipt is evidence of defendant's intent to deliver. An examination of the Walgreens receipt reveals that a "HP 61/61 Combo Ink" printer cartridge and a Chicago Sun-Times newspaper were purchased for $44.54. The receipt further indicates that $45 in cash was tendered as a form of payment. The testimony at trial established no counterfeit bills were recovered from the Walgreens. There was also no evidence presented by the State as to its further efforts to determine if there was any counterfeit currency in the Walgreens safe. While it could be inferred from the testimony that counterfeit currency might have been in the store safe,

14

the fact remains that no evidence was presented that defendant delivered counterfeit currency to the Walgreens. Moreover, although defendant was in possession of counterfeit $20 bills, he was not found in possession of counterfeit $5 bills. In fact, defendant was also found with $246 of genuine currency in his pocket. Thus, two reasonable inferences arise from defendant's possession of the Walgreens receipt; either he paid for the printer ink, in part, with counterfeit bills or he paid with genuine currency. Neither inference, when viewed in light of the totality of the evidence presented in this case, leads to a definitive conclusion that defendant delivered or had the intent to deliver counterfeit bills to the Walgreens.

¶ 32     The last evidence we will consider is the hairspray discovered in defendant's bedroom. The State maintains the hairspray is evidence of defendant's intent to deliver the counterfeit currency based on Agent Pillsbury's testimony that counterfeiters use hairspray on the counterfeit bills in order to defeat the counterfeit detector pen used at retail establishments. In this case, the testimony established that defendant resided at his daughter Shanic's apartment. In obtaining Shanic's consent to search her home, the law enforcement officials limited their search to one room, defendant's bedroom. A Canon 3-in-1 printer, multipurpose printer paper, and hairspray were found therein. The fact these common, personal items were discovered in his bedroom does not in of itself demonstrate his intent to deliver the counterfeit currency. The State produced no evidence at trial which established where the hairspray was located within the room. Accordingly, based on the limited evidence presented at trial, we lack any demonstration that the hairspray was utilized beyond its naturally intended purpose. Even if evidence had been produced that all three of these items were discovered in close proximity to one another, thereby creating an inference that they were utilized for the purposes of manufacturing, this evidence still would not demonstrate defendant's intent to deliver. We again observe defendant was not

15

charged with manufacturing counterfeit currency. Moreover, we observe that the jury acquitted defendant of the charges related to the currency found in his bedroom. We further note that based on the limited search of Shanic's residence, it is reasonable to infer that defendant's belongings were confined to one room. In such a situation, the implication that flows from this evidence is that these three items were in his room merely because they were his personal possessions and not for any improper purpose. Accordingly, defendant's possession of hairspray in this instance is at most a neutral factor.

¶ 33    In viewing the circumstantial evidence in its totality and in the light most favorable to the prosecution, we cannot say that the State proved defendant's intent to deliver the counterfeit currency beyond a reasonable doubt. While the evidence presented by the State established that defendant was in possession of the counterfeit bills, it established nothing more in regard to his intent to deliver. As previously discussed, mere possession of counterfeit bills is not a criminal offense (see *id.* § 17-3; *Beacham*, 358 Ill. at 377) and none of the evidence, albeit circumstantial, demonstrated defendant's intent to deliver the counterfeit bills; he was not arrested near any retail establishment, he was not observed attempting to make any purchase, and no counterfeit funds were discovered at the Walgreens. See *People v. Sherrod*, 394 Ill. App. 3d 863, 868 (2009) (holding the circumstantial evidence was insufficient to sustain a conviction for possession of a controlled substance with intent to deliver); *People v. Clinton*, 397 Ill. App. 3d 215, 226 (2009) (same). The fact hairspray, a printer, and printer paper were found in defendant's room does not give rise to the inference that defendant intended to deliver the counterfeit funds discovered on his person. See *People v. Ciralsky*, 360 Ill. 554, 560-61 (1935) (holding the evidence was insufficient to find the defendant guilty of forgery). Although the evidence here raises a question of whether defendant may have been involved in some form of criminal activity, it is not

sufficiently conclusive and does not produce a reasonable certainty that defendant intended to deliver the counterfeit currency. See *In re Gregory G.*, 396 Ill. App. 3d 923, 929 (2009); *People v. Brozan*, 163 Ill. App. 3d 73, 79 (1987) ("Although it may be said that the evidence adduced by the state creates a suspicion of wrongdoing by defendant, it does not prove his guilt beyond a reasonable doubt and his conviction must be reversed."). Suspicion alone is not sufficient to find a defendant guilty beyond a reasonable doubt. *People v. Thingvold*, 145 Ill. 2d 441, 456 (1991). Accordingly, we reverse defendant's conviction for forgery.

¶ 34    In reaching this conclusion, we again observe that there are no cases directly considering the sufficiency of the evidence in regard to section 17-3(a)(3) of the Code, but nonetheless we find *People v. Smith*, 91 Ill. App. 3d 242, 248 (1980), to be instructive. In that case, the defendant was convicted of forging prescriptions in Madison County, Illinois, in violation of section 17-3(a)(1) of the Code. *Id.* at 244. On appeal, the defendant argued that the State failed to prove beyond a reasonable doubt that the offense was committed by him in Madison County. *Id.* at 245. In considering what evidence was sufficient, the reviewing court observed that when one is charged with committing a crime in a particular county, the location of the offense is a "material averment," which must be proved to sustain the conviction. (Internal quotation marks omitted.) *Id.* (citing *People v. Allen*, 413 Ill. 69, 76 (1952)). Thus, "[a]s with any other element of a crime, venue must be proved beyond a reasonable doubt [citations], and the proof may be supplied by direct or circumstantial evidence." *Id.* The reviewing court noted that section 17-3(a)(1) required proof that the defendant "actually made the prescription in Madison County before the venue charged can be established" and, because the record was devoid of any direct evidence pertaining to the defendant's whereabouts when the prescription form was executed, the element of venue could only be sustained by resorting to circumstantial evidence. *Id.* at 246.

17

¶ 35    The *Smith* court then examined the facts and circumstances of the case as established by the evidence at the trial:

> "The only evidence concerning the delivery of a forged document is that a woman [not the defendant] presented a prescription to Mr. Kube in Reese's Drug Store in Madison County, Illinois. Thus, the inference could not be drawn that the prescription was made in Madison County by defendant because it was ultimately delivered in the county by him." *Id.* at 247.

In addition, the court observed that:

> "defendant's presence in the automobile of the woman who attempted to make use of the forged prescription, together with his actions in attempting to dispose of the partially completed prescription forms, are indicative of his complicity in the scheme to obtain a controlled substance by the use of a forged prescription. However, lacking is evidence establishing that he 'knowingly made a document apparently capable of defrauding another' in Madison County, Illinois. Absent, also, is any charge that he took part in the attempt to deliver such document." *Id.* at 248.

Based on the charge and the evidence adduced at the trial, the *Smith* court thus concluded venue had not been proved beyond a reasonable doubt. *Id.*

¶ 36    Similarly, in the case at bar, while defendant's possession of the counterfeit bills and the discovery of the printer, paper, and hairspray in his room can arguably be indicative of some kind of criminal scheme, such evidence alone is not enough to prove his intent to deliver the currency. See *id.*

¶ 37    Based on our conclusion that defendant was not proven guilty beyond a reasonable doubt of forgery because the evidence did meet the statutory requirements, we need not address his

alternative arguments that the trial court failed to follow Illinois Supreme Court Rule 431(b), the State proceeded to trial on six nol-prossed counts that had never been recharged, the prosecutor engaged in inappropriate rebuttal closing argument, and the trial court erred in sentencing defendant. As we have reversed defendant's conviction based on evidentiary insufficiency, the constitutional prohibition against double jeopardy precludes the State from retrying defendant. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 10. Therefore, "the only proper remedy is a judgment of acquittal. [Citations.]" (Internal quotation marks omitted.) *Brown*, 2013 IL 114196, ¶ 53.

¶ 38                                           CONCLUSION

¶ 39    For the reasons stated above, the judgment of the circuit court of Cook County is reversed.

¶ 40    Reversed.