2021 IL App (1st) 190254-U

No. 1-19-0254

Order filed May 14, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 1351 |
| | ) | |
| RONY MIKHAIL, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Justices Harris and Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for forgery is affirmed where the evidence was sufficient to establish knowledge and intent to defraud and the trial court did not err by restricting defendant's cross-examination of the victim.

¶ 2    Following a bench trial, defendant Rony Mikhail was found guilty of forgery and sentenced to three years' imprisonment. He appeals, arguing that the evidence was insufficient to establish that he knowingly delivered a fraudulent document with the intent to defraud, and that the trial

court erred by limiting defense counsel's cross-examination of the victim regarding alleged statements by defendant. We affirm.

¶ 3  Defendant was charged by information with one count of forgery (720 ILCS 5/17-3(a)(2) (West 2016)).

¶ 4  At trial, Frank Beltrame testified that he owns and operates a jewelry store in Chicago. On October 24, 2017, he was at work when defendant, whom Beltrame identified in court, entered the store. Defendant attempted to purchase jewelry using a personal check. Normally, Beltrame did not accept personal checks, but defendant suggested that Beltrame hold the jewelry until the check cleared, and Beltrame agreed. The State introduced the check for $2099 into evidence as People's Exhibit No. 1.

¶ 5  Beltrame deposited the check. Several days later, he reviewed his bank account online, and it appeared the check had cleared. He contacted his bank, which confirmed the clearance. As a result, Beltrame contacted defendant and told him he could retrieve the jewelry, which defendant did on October 27, 2017. Several days later, the bank mailed Beltrame a notice that defendant's check was "invalid." Beltrame tried to contact defendant on his cell phone, but was unsuccessful. Approximately a week later, Beltrame filed a police report. On December 13, 2017, Beltrame met with officers at the police station and identified defendant in a photo array. On January 26, 2018, an individual identifying himself as an attorney working for defendant returned the jewelry to Beltrame's store.

¶ 6  On cross-examination, Beltrame testified that the check bore defendant's name and address. Beltrame also examined defendant's state-issued identification in connection with the purchase. When Beltrame learned the check was invalid, he left a voicemail for defendant. Several

days later, defendant left Beltrame a voicemail. Beltrame denied that defendant apologized in that voicemail, and maintained that defendant instead stated that he did not know how the incident happened, and that he was in Columbus, Ohio, but would "square" the issue when he returned to Chicago. Beltrame could not recall whether he told Chicago police detective Kevin Bor about defendant's voicemail, but likely said "something to that effect."

¶ 7     Defense counsel then asked if Beltrame told Bor that in defendant's voicemail, he "apologized and said he would return the money?" The prosecutor objected, and the court sustained the objection, stating that defense counsel was "eliciting self-serving hearsay and the declarant is not even exactly clear because you're talking about a voicemail." Defense counsel argued that the potential testimony would be admissible because it "goes to the effect on the listener," which the court rejected.

¶ 8     The State entered a certified record of a bank statement from U.S. Bank for April 19, 2014 to May 20, 2014, for an account in defendant's name, which indicated that the account was closed.

¶ 9     Bor testified that on January 9, 2018, he met with defendant, whom he identified in court. Bor Mirandized defendant, who agreed to speak. Defendant stated that he tried to pay for the jewelry using a personal check from his U.S. Bank checking account, offered to retrieve the jewelry after the check cleared, and that the U.S. Bank checking account "was a closed account."

¶ 10     On cross-examination, the following exchange occurred between defense counsel and Bor:

> "Q. When you spoke to [defendant] on January 9, 2018, you said he told you that the checking account was a closed account?"
>
> A. He did.

Q. He did not tell you that he knew the check was for the account [that] was closed when he wrote the check, did he?

A. He said the check that he wrote was from his closed account.

Q. But he didn't say that when he wrote that check he knew the account was closed?

A. He did. He said he wrote the check on a closed account.

Q. He did not tell you specifically when I was writing the check I knew that account for the check was closed?

A. He said he wrote a check and gave it to Mr. Frank Beltran. The check was written on a closed account."

Bor confirmed defendant's statements were not recorded or reduced to writing.

¶ 11 After closing arguments, the court found defendant guilty. In so ruling, the court stated that it found the State's witnesses "credible and compelling." Additionally, the court believed the evidence established that defendant had the requisite mental state, and commented that, "People know if your accounts are open or closed."

¶ 12 Defendant filed a motion to reconsider or for new trial, alleging, *inter alia*, that he was not proven guilty beyond a reasonable doubt and that the court erred by sustaining the State's objection when the defense asked Beltrame "whether he made statements to Detective Bor regarding a phone call he received from [defendant]." The court denied the posttrial motion, sentenced defendant to three years' imprisonment, and denied defendant's motion to reconsider sentence.

¶ 13 On appeal, defendant first argues that the evidence was insufficient to sustain the trial court's guilty finding because it did not establish he knew his account was closed when he delivered the check.

¶ 14    When reviewing the sufficiency of the evidence, the "reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 64. The reviewing court will not substitute its judgment for that of the factfinder regarding the weight of the evidence or the credibility of witnesses, and all reasonable inferences must be drawn in favor of the State. *People v. Hardman*, 2017 IL 121453, ¶ 37. The factfinder need not dispel inferences that rise naturally from the evidence or raise any theory of innocence to the level of reasonable doubt. *Id.* The lower court's decision should not be reversed unless the evidence is so "improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Jackson*, 2020 IL 124112, ¶ 64.

¶ 15    To establish forgery as charged here, the State had to demonstrate that defendant, with intent to defraud, knowingly issued or delivered a false document. 720 ILCS 5/17-3(a)(2) (West 2016)). "[F]orgery by making a counterfeit check occurs at the check's creation with the requisite intent to defraud." *People v. Brown*, 2013 IL 114196, ¶ 41. Defendant here challenges the evidence regarding his knowledge and intent to defraud. Knowledge and intent in forgery cases may be established using circumstantial evidence. *People v. Johnson*, 2018 IL App (1st) 150209, ¶ 24. The fact that a defendant delivered a false document creates a rebuttable presumption of the defendant's intent to defraud. *People v. Carr*, 225 Ill. App. 3d 170, 176 (1992).

¶ 16    Here, we conclude that a rational factfinder could have found that defendant knew his account was closed when he wrote the check, and thus knowingly delivered a fraudulent check with the intent to defraud Beltrame. Defendant's intent to defraud can be inferred from the facts and circumstances surrounding the transaction.

¶ 17    The record shows that defendant delivered Beltrame a personal check from a U.S. Bank checking account for the jewelry on October 24, 2017. The check contained defendant's name and address, and defendant also provided Beltrame with his phone number. Beltrame's bank initially informed him that the check cleared, at which time Beltrame permitted defendant to retrieve the jewelry. When Beltrame's bank later deemed the check invalid, Beltrame unsuccessfully attempted to contact defendant, and left him a voicemail. Later, defendant left Beltrame a voicemail, in which he expressed surprise about the problem with the check and promised to "square" the issue. Beltrame ultimately filed a complaint with the police, after which defendant returned the jewelry through an attorney. Detective Bor testified that when he interviewed defendant after he was arrested, defendant stated that he purchased the jewelry with a personal check "from his closed account" and that "the checking account was a closed account." Further, the State presented evidence of a U.S. Bank statement addressed to defendant from May 2014, showing that the account on which defendant wrote the check was closed as of May 20, 2014. The statement stated "ACCOUNT CLOSED" in bold capital letters and indicated that there was an "ending balance" of zero dollars on May 20, 2014. From this evidence, a fact finder could reasonably infer that when defendant wrote and gave the check to Beltrame, he knew the account was closed and that he did so with the intent to defraud.

¶ 18    While the exact date defendant's U.S. Bank account was closed is unclear, and no evidence addressed the status of the account after May 2014, it is undisputed that the check did not clear. Moreover, the account was closed for at least some period during the 3½ years preceding defendant's attempt to purchase the jewelry, and defendant told Bor that the check he used was on a closed account. This is sufficient evidence from which the trial court could infer that when

defendant delivered the check, he knew his account was closed, which would establish his knowledge and intent to defraud Beltrame.

¶ 19    Defendant argues that Bor's testimony did not conclusively show that defendant admitted he knew the account was closed when he issued the check. Defendant also points to the facts that he returned the jewelry and gave Beltrame accurate contact information, and disputes the relevance of the certified bank record because it does not reveal the status of his account at the time of the purchase. But on sufficiency of the evidence review, we must construe all the evidence in the light most favorable to the State, and draw all inferences in favor of the State. *Hardman*, 2017 IL 121453, ¶ 37. Accordingly, these arguments fail because while the evidence might permit a factfinder to make different inferences from those the trial court made here, defendant does not explain why the inferences the court made were so unreasonable that it warrants reversal. Additionally, defendant's dispute regarding the value of his admission to Bor fails because in forgery cases, a defendant's knowledge and intent to defraud can be inferred from circumstantial evidence. *Johnson*, 2018 IL App (1st) 150209, ¶ 24. Applying this principle and construing the evidence in the light most favorable to the State, defendant's statement to Bor that the account was closed permits the reasonable inference that defendant knew the account was closed when he provided the check to Beltrame. *Id.*

¶ 20    Defendant next argues that the trial court erred by sustaining the State's objection to defense counsel's cross-examination of Beltrame regarding whether Beltrame told Bor that defendant left a voicemail in which he apologized and promised to repay Beltrame. Defendant argues this questioning constituted permissible impeachment of Beltrame by a prior inconsistent statement.

¶ 21    As an initial matter, the State argues that defendant waived this issue because defense counsel did not argue that the questioning constituted impeachment at trial, and instead argued it was relevant for the nonhearsay purpose of demonstrating the effect on the listener. Defendant responds that the issue was properly preserved because the purpose of the questioning was apparent on its face, and thus a detailed offer of proof was unnecessary.

¶ 22    While a "specific objection at trial forfeits all grounds not specified," an issue raised by a party on appeal "does not have to be identical to the objection raised at trial," and the reviewing court "will not find that a claim has been forfeited when it is clear that the trial court had the opportunity to review the same essential claim." *People v. Lovejoy*, 235 Ill. 2d 97, 148 (2009).

¶ 23    Where the trial court excludes evidence, the party seeking admission must make an adequate offer of proof on the trial record to preserve the error for review. *People v. Andrews*, 146 Ill. 2d 413, 420-21 (1992). "The purpose of an offer of proof is to disclose to the trial judge and opposing counsel the nature of the offered evidence and to enable a reviewing court to determine whether exclusion of the evidence was proper." *Id.* at 421. The offer of proof must be "detailed and specific" if "it is not clear what a witness would say, or what his basis would be for saying it." *People v. Peeples*, 155 Ill. 2d 422, 457 (1993). Where an offer of proof is insufficient, the party seeking to admit the evidence has waived the issue for purposes of appeal. *Andrews*, 146 Ill. 2d at 421.

¶ 24    Here, defense counsel asked Beltrame if defendant left a voicemail in which he apologized. Beltrame acknowledged that defendant left a voicemail but denied that defendant apologized therein. Defense counsel then asked if Beltrame told Bor about the voicemail, and Beltrame responded that he said "something to that effect" to Bor. Counsel asked whether Beltrame told Bor

that defendant apologized and promised to repay Beltrame in the voicemail, and the prosecutor objected. The court sustained the objection, finding that defense counsel was attempting to elicit defendant's self-serving hearsay statement from Beltrame. Defense counsel argued that the purpose of the question was to elicit the effect of the alleged statement on Beltrame, which the court rejected. On this appeal, defendant does not pursue the effect-on-listener theory, and instead argues that the alleged statement would have constituted proper impeachment of Beltrame by a prior inconsistent statement.

¶ 25    On this record, we agree with the State that defendant did not properly preserve the issue for appeal. While the general substance of the information defense counsel hoped to elicit from Beltrame was apparent from the question itself, it is not at all clear on this record whether the proposed questioning would have constituted appropriate impeachment. Defendant claims here that the question was relevant for purposes of impeachment by prior inconsistent statement. While impeachment of a witness by his prior inconsistent statement is a valid form of cross-examination, the proponent of the prior inconsistent statement must lay a proper a foundation. *People v. Evans*, 2016 IL App (3d) 140120, ¶¶ 31-32. "If the witness unequivocally admits having made" the statement, "he stands impeached," but if the witness denies or equivocates, "it is incumbent on the examining party to offer evidence of the statement." *Id.* ¶ 33. Here, we do not have anything in the trial record to demonstrate that Beltrame in fact told Bor that defendant apologized in the voicemail, nor does the record illuminate whether Beltrame would have acknowledged under cross-examination that he made that statement to Bor, or alternatively, whether defense counsel had extrinsic evidence of the statement to introduce if Beltrame denied it. Without such a record, we must conclude that the nature of defendant's current argument is not sufficiently similar to the

argument made at trial such that this court may review the trial court's exclusion of the evidence for error. *Lovejoy*, 235 Ill. 2d at 148.

¶ 26 Defendant maintains that even if he waived this claim, we may reach it via plain error review. Where, as here, a defendant did not properly preserve a claim through a timely objection and inclusion in a posttrial motion, a reviewing court may reach the issue on plain error review if a clear or obvious error occurred below, and either the evidence at trial was closely balanced such that the error alone might have changed the result, or the error was so serious that it impacted the fairness and integrity of the trial process. *People v. Sebby*, 2017 IL 119445, ¶ 48. We must first determine whether a clear or obvious error occurred. *Id.* ¶ 49.

¶ 27 A criminal defendant has a constitutional right to a fair trial, which includes the right to confront and cross-examine the witnesses against him. U.S. Const., amend. VI; *People v. Nelson*, 235 Ill. 2d 386, 420-21 (2009). The trial court's limitation of cross-examination is reviewed for abuse of discretion. *People v. Reese*, 2017 IL 120011, ¶ 75.

¶ 28 Here, as described above, the trial court sustained the State's objection to defendant's question of whether Beltrame told Bor that defendant apologized and offered to repay Beltrame on the voicemail. The court believed the question was an attempt by defendant to elicit self-serving hearsay. We find that this decision was not a clear or obvious error. The law is clear that a defendant may not introduce "his own exculpatory statements" without a recognized exception to the hearsay rule because such statements constitute inadmissible self-serving hearsay. See *People v. Kraybill*, 2014 IL App (1st) 120232, ¶¶ 64-65. The obvious relevance of the testimony at issue here would be to demonstrate that because defendant expressed surprise that the check bounced, he did not have the requisite intent to defraud Beltrame when he delivered the check. The

testimony, therefore, would be self-serving hearsay regarding defendant's own exculpatory statement.

¶ 29    Defendant argued at trial that the statement was relevant for the nonhearsay purpose of its effect on the listener, and here on appeal argues that it was relevant to impeach Beltrame. First, we note that defendant never explained how the statement was relevant to show its effect on Beltrame. Second, we find that the relevance for impeachment of Beltrame was limited at best because Beltrame acknowledged at trial that defendant left a voicemail and he likely told Bor about it, making whether Beltrame specifically told Bor that defendant "apologized" during the voicemail of limited relevance to Beltrame's credibility. Finally, regardless of any marginal relevance the testimony could have for appropriate purposes, the statement's potential to be used for the improper hearsay purpose of showing defendant did not have the requisite intent to defraud remains, and thus the court did not abuse its discretion by excluding it. *Id.*

¶ 30    Because we find that the trial court did not commit a clear or obvious error, plain error review is inappropriate, and defendant's claim fails.

¶ 31    For the foregoing reasons, the trial court's decision is affirmed.

¶ 32    Affirmed.