2025 IL App (1st) 232192-U

No. 1-23-2192

Order filed March 18, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 3385 |
| | ) | |
| KRIS LUCZAJ, | ) | Honorable |
| | ) | Joseph M. Cataldo, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction for leaving the scene of a motor vehicle accident involving death over his contention that the State failed to prove his guilt beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Kris Luczaj was found guilty of leaving the scene of a motor vehicle accident involving death (625 ILCS 5/11-401(b) (West 2020)) and was sentenced to nine years' imprisonment. On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt. We affirm.

¶ 3     Defendant was charged by indictment with two counts of leaving the scene of a motor vehicle accident involving death, and one count of obstructing justice. The charges arose from an incident on December 25, 2021, where defendant allegedly struck Emil Benak with defendant's vehicle, causing Benak's death. The State proceeded on one count of leaving the scene of a motor vehicle accident involving death.

¶ 4     At trial, evidence was adduced that on December 25, 2021, Benak celebrated Christmas Day at his brother's house and departed at approximately 9:20 p.m. At 9:49 p.m., a black vehicle traveling at a high rate of speed struck Benak while he walked across Irving Park Road in Schiller Park. The accident was filmed by a nearby video camera, and the footage was published. The vehicle did not stop, and the driver did not report the accident. Benak died from his injuries.

¶ 5     Responding officers photographed the scene and collected evidence, including vehicle parts from a black Volvo. A crash reconstruction officer with the Schiller Park Police Department examined the location of the accident and concluded that the Volvo was traveling between 77 and 85 miles per hour on a street with a speed limit of 30 miles per hour. The site did not have skid marks, which, according to the officer, implied that if the driver used his brakes "it wasn't hard enough to generate enough heat to pull the tar from the roadway." The license plate of the Volvo was identified using footage from a red-light camera in the area. Police recovered no videos establishing the identity of the driver, and no witnesses gave a description of the driver. The parties stipulated that, according to Illinois Secretary of State records, the black Volvo involved in the accident was registered to defendant at the 5000 block of Sunnyside Avenue in Chicago.

¶ 6     Defendant's brother, who lived on George Street in Franklin Park, testified that defendant spent Christmas day with him at his home and left in his black Volvo around 5:30 p.m.

¶ 7    The police used software to map defendant's cell phone location and found that he left George Street at approximately 9:38 p.m. Defendant's cell phone then moved east of "355 Irving Park Road," then moved back to the "[n]orthwest side" until 11:59 p.m., when no cell phone towers appeared on the records.[1] This led officers to believe that defendant turned off his phone or there was cell phone tower interference or network problems. However, cell phone tower interference likely would not block a signal for several hours. The defense adduced evidence that historical cell site analysis is not 100 percent accurate, and myriad factors, which the police did not analyze, could impact whether a cell phone "ping[s] off" an immediately adjacent tower.

¶ 8    On December 26, 2021, at approximately 4:45 a.m., an officer traveled to the area of Leland Avenue and Lavergne Avenue in Chicago and observed the black Volvo involved in the accident. The Volvo had been set on fire, and the officer photographed it. Footage from nearby residences, taken at 4:30 a.m., showed a person wearing a black jacket and black pants walking with what a detective described as a distinct "gait." The Schiller Park crash reconstruction officer examined the Volvo on December 28, 2021, and discovered charred paper which smelled like gasoline. An arson investigator testified that he reviewed photographs of the Volvo and concluded that the pattern of damage comported with being intentionally set on fire using an accelerant. No physical evidence identifying anyone was recovered from the vehicle.

¶ 9    The Schiller Park crash reconstruction officer analyzed GPS data extracted from defendant's cell phone. The data showed defendant's phone "[w]ithin a couple blocks" of the crash site at 9:49 p.m. No GPS points were documented between 11:58 p.m. and 8:02 a.m. The officer stated on cross-examination that the GPS data points did not establish who drove the vehicle. The

---

[1] The record establishes that the accident occurred at 9355 Irving Park Road.

officer stated that "based on the time of day and red lights," it would take 10 to 15 minutes to drive from defendant's brother's residence to the crash site.

¶ 10     At approximately noon on December 26, 2021, defendant traveled to the Schiller Park police station and reported that his vehicle had been stolen. With the aid of an officer who spoke Polish, defendant answered "[y]es" to a detective's question as to whether he was the last person who drove that vehicle. The officers asked defendant for his mobile telephone number, and defendant showed them his cell phone which had a white label displaying the number. Footage from the station, which was published, shows defendant wearing a dark colored jacket and pants, similar to the person seen in the residential footage. The investigating detective testified that defendant walked with "the same distinct gait."

¶ 11     The State introduced several stipulations. First, the parties stipulated to the foundation for footage from several red light cameras, vehicle dashboard cameras, and exterior cameras from three residences on the 4700 block of Laporte Avenue; the footage was introduced into evidence. The parties stipulated that defendant's mobile phone records were compiled and provided to the police. Files extracted from defendant's mobile phone were entered as an exhibit.

¶ 12     Dr. Manfred Schenk, an expert in cellular telephone technology, testified for the defense that he reviewed defendant's cell phone records and opined it was "not possible *** to pinpoint the location" of defendant's phone. The call records relating to the cell towers "only tell you where the phone connected to the cell network," and not where the phone was located. Further, this data had "an area of ambiguity which is probably 500 square miles," which did not account for possible interference. Schenk also reviewed the cell data extracted from defendant's phone, and determined that "the records are flawed, inconsistent, and not possible."

¶ 13    On cross-examination, Schenk stated that in his affidavit summarizing his analysis, he did not identify any errors on December 25, 2021, between 2 p.m. and 10 p.m. Chicago had more cell towers than a rural area, and it was likely, although not certain, that a cell phone in Chicago would connect to a nearby cell tower as opposed to one over 200 miles away. Schenk identified his supplemental affidavit wherein he summarized his analysis of the extracted GPS data from defendant's cell phone and identified nine anomalies based on his calculations using exact latitude and longitudinal coordinates, but stated that his analysis might change if he knew there was a variance within each of the coordinates.

¶ 14    In rebuttal, the State presented evidence that, in certain records extracted from defendant's cell phone, there was a variance listed in the GPS points.

¶ 15    The court found defendant guilty of leaving the scene of a motor vehicle accident involving death, noting that all of the evidence viewed together established his guilt "beyond a reasonable doubt." Defendant left his brother's house in the Volvo and traveled in the direction of the accident, 10 to 15 minutes away, which was corroborated by the cell phone records. Schenk's testimony did not discredit the records, because other testimony corroborated that defendant was at his brother's house and the red-light cameras showed his Volvo in the area of the accident. Further evidence showed the Volvo on fire, and a person in dark clothes "limping away from the parked car" with nobody else in the area. The court noted that it was "convenient" that the cell records "stop[ped]" after the person walked from the vehicle. Defendant was shown at the police station the following day wearing similar clothes and walking with "the same" gait.

¶ 16     Defendant filed a motion for a new trial, arguing, *inter alia*, that no evidence proved his identity as the driver. The court denied the motion and, following a hearing, sentenced defendant to nine years' imprisonment.

¶ 17     On appeal, defendant argues that the State failed to prove his guilt beyond a reasonable doubt because no evidence placed him at the scene of the accident. Defendant argues that the case rests on "entirely circumstantial evidence," cell tower evidence was not reliable, and "the fact that his cell phone was pinging at the scene of the accident does not in any way prove that he was the driver of the vehicle."

¶ 18     As an initial matter, we observe that defendant argues that the trial court erred in part because it "failed to account for reasonable theories of his innocence." This standard no longer applies in Illinois. See *People v. Schott*, 145 Ill. 2d 188, 202-03 (1991) ("The reasonable doubt test has taken the place of another specialized standard of review, the reasonable hypothesis of innocence test, a test which was formerly used in circumstantial evidence cases.").

¶ 19     The standard of review for a challenge to the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Belknap*, 2014 IL 117094, ¶ 67 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). This standard applies whether the evidence is direct or circumstantial. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007) (citing *People v. Cooper*, 194 Ill. 2d 419, 431 (2000)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. The reviewing court must allow all reasonable inferences from the record in favor of the prosecution (*People v. Cunningham*, 212 Ill.

2d 274, 280 (2004)) and will not reverse a conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt" (*People v. Jackson*, 232 Ill. 2d 246, 281 (2009)).

¶ 20    Circumstantial evidence is that which "give[s] rise to reasonable inferences of other facts that tend to establish guilt or innocence of the defendant." *People v. Johnson*, 2018 IL App (1st) 150209, ¶ 19. Circumstantial evidence alone can support a criminal conviction when the evidence satisfies proof beyond a reasonable doubt of the elements of the charged offense; the factfinder "does not need to be satisfied beyond a reasonable doubt as to each link in the chain of circumstances." *Johnson*, 2018 IL App (1st) 150209, ¶ 19. "[T]the trier of fact is not required to disregard inferences which flow normally from the evidence before it." *People v. Bush*, 2023 IL 128747, ¶ 33 (quoting *Jackson*, 232 Ill. 2d at 281).

¶ 21    To sustain a conviction for leaving the scene of a motor vehicle accident involving death, the State needed to prove that defendant was involved in the motor vehicle crash resulting in Benak's death, did not stop his vehicle, and did not report the accident within a certain time. 625 ILCS 5/11-401(b) (West 2020). Defendant only challenges his identity as the driver of the vehicle which struck Benak.

¶ 22    Here, cell tower and cell phone GPS evidence indicated that defendant left his brother's house at 9:38 p.m. The evidence showed that he left in his black Volvo, alone. His brother's house is approximately 10 to 15 minutes from the scene by car. Red-light cameras from the area, combined with the location of defendant's cell phone, showed defendant's vehicle in the area at the time of the accident. At approximately 9:49 p.m., defendant's black Volvo struck Benak and drove off without stopping or reporting the accident. It was traveling between 77 and 85 miles per

hour on a street with a speed limit of 30 miles per hour. Cell tower and cell phone GPS evidence showed that, at the time of the accident, defendant's cell phone was in the same area. Defendant told police that he was the last person to drive his car, before it was allegedly stolen.

¶ 23    Further, the defendant's Volvo was discovered on fire two to three blocks from his home and cameras from nearby residences show a man wearing black clothing walking with a distinct limp at the same time and in the same location as the burning Volvo. Later that day, defendant went to the police station to report his vehicle stolen. Footage from the station shows him wearing black clothing and walking with a gait similar to the person in the residential footage. This evidence, taken together, supports the reasonable inference that defendant struck Benak with the Volvo, did not report it, and then attempted to dispose of the vehicle. See *Johnson*, 2018 IL App (1st) 150209, ¶ 19.

¶ 24    Defendant nevertheless contends that the evidence was insufficient to support his conviction because the cell phone evidence was flawed and did not prove that he drove the vehicle at the time of the offense. He also argues that no videos identified him as the perpetrator and no evidence showed how he arrived home after he allegedly set his Volvo on fire.

¶ 25    Despite defendant's contentions, the evidence was sufficient to establish his guilt beyond a reasonable doubt. First, although defendant challenges the accuracy of the evidence establishing the location of his cell phone, this evidence was corroborated by the witness testimony and footage. The trier of fact "is not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Jackson*, 232 Ill. 2d at 281. It is a reasonable assumption that defendant had his cell phone with him during the incident given the timeline of events, the fact

that he did not report his cell phone stolen, and that defendant produced his phone at the police station. Assuming arguendo that the technology employed was unable to pinpoint the location of defendant's phone exactly, it corroborated other evidence that defendant's Volvo hit Benak and it is a natural inference that defendant, as the registered owner of the vehicle, was the person who had driven it. See *People v. Day*, 2019 IL App (4th) 160217-B, ¶ 50. The accident occurred minutes after defendant drove from his brother's house, alone, which undermines defendant's claim that he was not the driver. It is highly unlikely that defendant had enough time to lend his car to someone else or that it was stolen during that limited timespan. He would have had to park his car and change drivers somewhere along the route from his brother's house to the scene. Nothing in the record indicates that anyone else was driving the black Volvo. Video evidence depicted a man with similar clothing and gait to defendant at 4:30 a.m. in the same area where defendant's Volvo was set on fire, which could establish his consciousness of guilt. See *People v. Abernathy*, 402 Ill. App. 3d 736, 752-53 (2010) (the defendant's setting fire to his house was admissible for demonstrating that he was attempting to destroy evidence as an expression of his consciousness of guilt).

¶ 26    Taking all the evidence in the light most favorable to the State, the court could have reasonably concluded that defendant struck Benak with his vehicle and, rather than reporting the accident, attempted to destroy the evidence. As the evidence is not so "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt," we affirm his convictions. See *Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 27    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 28    Affirmed.