# Illinois Official Reports

## Appellate Court

---

## *In re N.A.*, 2018 IL App (1st) 181332

---

| | |
|---|---|
| Appellate Court Caption | *In re* N.A., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. N.A., Respondent-Appellant). |
| District & No. | First District, First Division<br>Docket No. 1-18-1332 |
| Filed<br>Rehearing denied | December 24, 2018<br>January 28, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-JD-00049; the Hon. Stuart F. Lubin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Jonathan Pilsner, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Veronica Calderon Malavia, and Kathryn A. Schierl, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE GRIFFIN delivered the judgment of the court, with opinion.<br>Justices Pierce and Walker concurred in the judgment and opinion. |

**OPINION**

¶ 1    Respondent N.A. was adjudicated delinquent of armed robbery (720 ILCS 5/18-2(a)(2) (West 2016)) and sentenced to three years' probation. On appeal, he challenges the sufficiency of the robbery victim's eyewitness identification testimony and the effectiveness of his trial counsel. We affirm.

¶ 2                                       BACKGROUND

¶ 3    On December 9, 2017, at around 8:10 p.m., victim Cynthia Lett backed her car into her garage. Her nine-year-old daughter, A.Y., sat next to her. As the victim opened her car door, two men walked into the garage and positioned themselves on either side of her car. Still seated, she looked up and saw the man's face. He pointed a gun at her and demanded her to "hand over everything." She gave the man her purse and cell phone. The two men left, and the victim called the police.

¶ 4    On January 8, 2018, Chicago police detective Spiro Kaldis went to the victim's home and showed her two photo arrays. She signed a photo advisory form indicating that that she did not want to be audio or video recorded and understood she had no obligation to identify anyone. The victim identified respondent N.A. in the first photo array as the man who robbed her at gunpoint on the night of December 9, 2017. She did not identify anyone in the second photo array.

¶ 5    Two days later, on January 10, 2018, the State filed a petition for adjudication of wardship against respondent. He was 17 years old when the alleged offense was committed. The petition charged him with one count of armed robbery (*id.*), one count of aggravated robbery (*id.* § 18-1(b)(1)), one count of robbery (*id.* § 18-1(a)), and one count of theft (*id.* § 16-1(a)(3)). Respondent did not file a motion to suppress the identification, and his case proceeded to trial.

¶ 6    The State called two witnesses at trial. The first witness, victim Cynthia Lett, testified that she and her daughter attended a birthday party on December 9, 2017, and returned home around 8:10 p.m. She backed her car into the detached garage behind her house, and as she opened the driver side door to get out, two men walked into the garage. They took positions on either side of the car.

¶ 7    The victim looked up at the man from her seated position. He stood two feet away on the other side of her car door. Because the door was ajar, the car's dome light activated. A "dim" garage light had turned on, and there was some additional "ambient lighting from the alley." The victim testified that she "immediately" saw the man had a gun. It was a "small pistol-type gun," dark in color, and he held it "close to his body." From her vantage point, the gun was pointed "pretty much to [her] face."

¶ 8    He was African-American and wore a "nondescript," "dark colored sweatshirt" with the hood on, but she could see his face and "short hair." After he demanded "give me everything" and "don't move," the victim surrendered her purse and cell phone. The two men left. The victim called the police.

¶ 9    Police arrived at the victim's house, and she gave them a description of the two men. She described them as very "nondescript" because of the dark clothing, they appeared to be 20

years old, and she guessed that their heights were between 5 feet, 10 and 11 inches. A month later, she met with Detective Kaldis at her house.

¶ 10    The victim testified that, on January 8, 2018, Detective Kaldis showed her two sets of photographs. Before viewing the photographs, she signed a photo lineup advisory form indicating that she did not want to be audio or video recorded. The victim understood she did not have to identify anyone. She identified respondent in the first set of photographs as the man who robbed her on the night of December 8, 2017. She did not identify anyone from the second set.

¶ 11    On cross-examination, the victim testified that her focus during the robbery was directed at respondent's gun. She indicated that the alleged robbery lasted five to seven minutes and that respondent did not speak with an accent when he voiced his demands. On recross-examination, the victim testified that she had "no problem at all" seeing respondent's face or identifying him in court. She testified, "I was able to get a really good look at the guy when it was happening because his face was so close to me. So then, when I saw the photo lineup, you know, I knew the photos that were absolutely not the person. And so, you know, when I identified that person, I was certain."

¶ 12    The State called Detective Kaldis as its second witness. He testified that he went to the victim's house on January 8, 2018, to show her two photo arrays he had prepared. He was an independent administrator, meaning that he had "no knowledge of the case or who the suspect may be in the photo array." The first photo array he showed the victim contained a photograph of respondent. The victim identified respondent in the first photo array, circled his photograph, and initialed it. She had no difficulty identifying respondent but could not identify the other offender from the second photo array.

¶ 13    On cross-examination, Detective Kaldis testified that he did not video or audio record the victim during the identification procedure. He was not equipped with a body camera when he went to her house. Detective Kaldis testified that, if the victim consented to a video recording, he would have taken her to the police station, as he did not have the means record the victim at her home. The State rested its case.

¶ 14    Respondent called only one witness: arresting officer Sean Markham. Officer Markham testified that he arrested respondent and, during the process, learned that he was born in Ghana. When asked whether respondent spoke with an accent, Officer Markham testified, "he could have an accent, yeah," "[if] he spoke right now, I could probably hear an accent." The defense rested its case.

¶ 15    The record indicates that the victim's daughter, A.Y., who sat on the passenger side of the car during the robbery, was shown two photo arrays on the same day her mother identified respondent. The lineup advisory form signed by A.Y. indicated that she did not make a positive identification of the armed robber but instead stated that four individuals looked like or may have been the offender who approached her mother. Respondent's counsel did not present A.Y. as a witness or elicit any testimony regarding her nonidentification at trial.

¶ 16    The trial court found that "based on the victim's adequate opportunity to observe [respondent] at the time of the robbery" the State had proven the armed robbery (*id.* § 18-2(a)(2)) beyond a reasonable doubt. The trial court merged the remaining counts, entered a finding of best interest in wardship, and sentenced respondent to three years'

probation. He appeals his delinquency adjudication.

¶ 17                                    ANALYSIS

¶ 18     The issues on appeal are (1) whether the victim's eyewitness identification testimony was sufficient to sustain respondent's delinquency adjudication beyond a reasonable doubt and (2) whether respondent's trial counsel was ineffective.

¶ 19     The sum total of the State's evidence in this case was the victim's eyewitness identification. Respondent challenges that identification as unreliable and insufficient to support his delinquency adjudication beyond a reasonable doubt. In the alternative, he asks us to grant him a new trial because his counsel's failure to elicit any testimony about A.Y.'s nonidentification was objectively unreasonable and prejudicial. We address each argument in turn.

¶ 20     The reasonable doubt standard applies to delinquency proceedings. *In re J.J.*, 2016 IL App (1st) 160379, ¶ 20. Therefore, we review the sufficiency of the evidence presented at respondent's trial in the light most favorable to the State and answer the question of whether any rational trier of fact could have found the identity of the perpetrator and the essential elements of armed robbery beyond a reasonable doubt. *In re Christian W.*, 2017 IL App (1st) 162897, ¶ 24; 720 ILCS 5/18-1, 18-2(a)(2) (West 2016) (a person commits armed robbery when he knowingly takes property from the person or presence of another by the use of force or by threatening the imminent use of force and carries on or about his person or is otherwise armed with a firearm during the robbery).

¶ 21     It is not our function to retry respondent or substitute our judgment for that of the trial court on questions of witness credibility, the appropriate weight to give the testimony, reasonable inferences to be drawn from the evidence, or evidentiary inconsistencies. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007); *People v. Jackson*, 2017 IL App (1st) 142879, ¶ 23; *People v. Ross*, 229 Ill. 2d 255, 272 (2008). The trial court's findings are, however, not conclusive, and respondent's delinquency adjudication will not stand if the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of his guilt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 225 (2009).

¶ 22     A single eyewitness identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification. *People v. Davis*, 2018 IL App (1st) 152413, ¶ 55. A vague or doubtful identification will not suffice. *Id.* Illinois courts look at the totality of the circumstances and consider the following factors to determine whether an eyewitness identification is reliable: (1) the witness's opportunity to view the suspect during the commission of the offense, (2) the witness's degree of attention, (3) the accuracy of any prior descriptions provided, (4) the witness's level of certainty at the time of the identification procedure, and (5) the length of time between the crime and the identification. *People v. Slim*, 127 Ill. 2d 302, 307-08 (1989); *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

¶ 23     Respondent argues that the victim's identification is unreliable. In his brief, however, respondent goes further and takes aim at all eyewitness identifications. He suggests that the Illinois Supreme Court has "cast doubt" on the reliability of eyewitness identifications and contends that the legislature shares a similar "skepticism" evidenced by its enactment of section 107A-2 of the Criminal Code of 1963 (Lineup Statute) (725 ILCS 5/107A-2 (West 2016)), which governs the procedure by which lineups are conducted. Circling back to his

case, respondent argues that the *Biggers* factors are no longer the "end-all-be-all of assessing identification testimony" and urges us to find that Detective Kaldis's noncompliance with the Lineup Statute further undercuts the reliability of an already unreliable eyewitness identification.

¶ 24    We start with the *Biggers* factors, as our precedent clearly requires. See *Slim*, 127 Ill. 2d at 307. The victim's testimony showed that she had an ample opportunity to view respondent during the commission of the offense. She had "no problem at all" seeing his face from where she sat in her car and got a "really good look at the guy when it was happening because his face was so close to me." Respondent stood two feet away from the victim. The encounter lasted "five to seven minutes."

¶ 25    Respondent contends that the lighting conditions were inadequate because the garage light was "dim." But there is simply no evidence that the lighting conditions (or respondent's hooded sweatshirt) obstructed the victim's view or prevented her from seeing respondent's face. All the testimony is, frankly, to the contrary. The victim was not impeached, and the trial court found her testimony to be credible. See *People v. Johnson*, 2018 IL App (1st) 150209, ¶ 18 (the trier of fact is best equipped to judge the credibility of witnesses). The trial court's determination as to the first *Biggers* factor stands.

¶ 26    The victim's degree of attention during the robbery was not "particularly weak," as respondent contends. To be sure, the victim did testify that her "focus" during the robbery was on respondent's gun, but on redirect examination she clarified her testimony and indicated she was able to see respondent's face while focusing on his gun. We cannot consider respondent's scholarly article on "weapon focus" (or his reference to an article on the unreliability of "cross-racial" identifications), as the trial court was not afforded the opportunity to consider that information and heard no argument based upon it. See *In re Ronald J.*, 2017 IL App (4th) 160855, ¶ 22 (delinquency proceedings are not exempt from the forfeiture doctrine, and an issue not raised in the trial court is deemed forfeited on appeal). Accordingly, respondent's arguments based upon those articles are forfeited.

¶ 27    The victim's prior description of respondent does not undercut the trial court's finding. The victim testified at trial that she described respondent to police as a nondescript, 20-year-old who stood between 5 feet, 10 to 11 inches, in height. Respondent argues that this description was inaccurate and unacceptable given respondent's age of 17 at the time of the offense and height of five feet, seven inches. He places particular emphasis on the victim's use of the word "nondescript" and her failure to include respondent's short hair and lack of facial hair in her initial description of respondent.

¶ 28    The victim was not required to describe the physical characteristics of the offender to police with pinpoint accuracy. *Slim*, 127 Ill. 2d at 308-09 (a witness may give a general description based on his or her total impression of the suspect's appearance and is not expected, or required, to distinguish individual and separate features of the suspect in making an identification). Our review of the record indicates that the victim's use of the word "nondescript" was a reference to respondent's dark clothing, not his facial or other physical features.

¶ 29    Furthermore, the trial court was aware that the victim ventured a guess as to respondent's exact height and failed to provide an initial description of his hairstyle to police. The trial court addressed these issues within its province and resolved them against respondent. See *id.* at 308 ("[v]ariances between a witness' trial testimony and pretrial statements raise questions

of credibility which the trier of fact must assess in making a determination of guilt"). We defer to the trial court's decision.

¶ 30  As for the victim's level of certainty at the time she viewed the photo arrays and identified respondent, she testified to being "certain" of her identification and "knew the photos that were absolutely not the person." Detective Kaldis testified that the victim had no problem making the identification. Respondent argues that an eyewitness's confidence when identifying an offender is not conclusive of accuracy. But whether or not his argument rings true is immaterial, as respondent failed to present this argument to the trial court. *In re Ronald J.*, 2017 IL App (4th) 160855, ¶ 22. The argument is forfeited.

¶ 31  As respondent requests, we do not "easily brush off" the fact that a month lapsed between the identification and the armed robbery. However, we have upheld positive identifications involving considerably longer lapses in time. See *People v. Malone*, 2012 IL App (1st) 110517, ¶ 36 (identification was reliable despite lapse in time between crime and identification of one year and four months). We therefore see no reason to upend the trial court's determination as a result of the lapse in time here.

¶ 32  Respondent urges this court to look beyond the *Biggers* factors and recognize that our supreme court has moved away from them. He supports his argument with *People v. Lerma*, 2016 IL 118496, ¶ 24, and accurately quotes the case to show that the court's view of expert testimony on the reliability of eyewitness identifications has changed ("we not only have seen that eyewitness identifications are not always as reliable as they appear, but we have also learned, from a scientific standpoint, why this is often the case"). However, we do not see how *Lerma*, which held that the trial court erred when it denied the respondent's request to present expert testimony on the reliability of eyewitness identifications where the State's case hinged on the identification testimony of two eyewitnesses, applies to his case. Respondent did not call, or attempt to call, an expert witness at trial. Accordingly, if *Lerma* changed the legal framework of eyewitness identification, respondent made no attempt to benefit from it at trial.

¶ 33  Respondent argues that Detective Kaldis violated the Lineup Statute and, as a result, the victim's identification is entitled to "less weight." The Lineup Statute governs the manner and means by which law enforcement conducts lineups. See 725 ILCS 5/107A-2 (West 2016); see also *id.* § 107A-0.1 (the term lineup includes a photo array). A video record of all lineup procedures must be made unless it is not practical or the eyewitness refuses. *Id.* § 107A-2(h). If making a video record is not practical or the eyewitness refuses, an audio record shall be made, if practical. *Id.* § 107A-2(h)(1)(B). The Lineup Statute identifies the following as "consequences" of noncompliance: (1) the trial court can consider noncompliance as a factor in adjudicating a motion to suppress an eyewitness identification or any other motion to bar an eyewitness identification, and (2) when warranted by the evidence at trial, the trial court must instruct the jury that it may consider noncompliance to assist in its weighing of the identification testimony of the eyewitness. *Id.* § 107A-2(j).

¶ 34  The State argues that the lineup form signed by the victim indicated her unwillingness to be video or audio recorded and, therefore, this is a nonissue. But, as respondent points out, the Lineup Statute contains no language that would allow an eyewitness to refuse an audio recording. See *id.* § 107A-2(h)(1)(B). The State's argument is therefore misplaced, and absent any argument as to why an audio recording of the photo array procedure was not practical under the circumstances, we are left with sheer noncompliance.

¶ 35    Detective Kaldis testified that he did not audio or video record the identification procedure or bring any recording devices to the victim's house. The only testimony related to the practicability of recording the identification procedure was Detective Kaldis's statement that "if [the victim] wanted to record it, we would have went to Belmont and Western and done it in the ERI room." Given technological advancements, the portability of recording devices, and law enforcement's use of body cameras, we see no reason why Detective Kaldis could not have made an audio record as the Lineup Statute requires. But the violation had no effect on the reliability of the victim's identification.

¶ 36    Respondent was not tried before a jury, and he failed to file a motion to suppress or bar the victim's identification. Accordingly, Detective Kaldis's noncompliance was inconsequential. Nevertheless, the trial court was fully informed of the fact that an audio recording was not made. We presume the trial court considered this fact when it assessed the credibility of the victim and Detective Kaldis and adjudicated respondent delinquent of armed robbery (720 ILCS 5/18-2(a)(2) (West 2016)). See *People v. Howery*, 178 Ill. 2d 1, 32 (1997) (trial court is presumed to know the law and apply it properly when the record contains no strong affirmative evidence to the contrary).

¶ 37    We hold that the totality of the circumstances and *Biggers* factors favor the State and support the trial court's finding that the victim's identification was reliable. Viewed in the light most favorable to the State, the victim's testimony was sufficient to support respondent's delinquency adjudication beyond a reasonable doubt. The victim had an unobstructed view of respondent's face and his gun from a distance of two feet for a period of five to seven minutes. She was "certain" respondent was the man who robbed her at gunpoint and took her purse and cell phone, and she "had no problem at all" picking respondent out of the photo array or identifying him in court. Despite respondent's arguments to the contrary, the basic legal principle that a single eyewitness identification of the accused under circumstances permitting a positive identification is sufficient to convict remains fully intact. *In re M.W.*, 232 Ill. 2d 408, 435 (2009). We have one such identification here.

¶ 38    Respondent's remaining argument is that his counsel was ineffective. He argues that his counsel's failure to elicit any testimony regarding A.Y.'s nonidentification at trial (either from A.Y. or Detective Kaldis) was objectively unreasonable and caused him to suffer prejudice.

¶ 39    Section 1-5(1) of the Juvenile Court Act of 1987 grants minors the right to be represented by counsel in juvenile proceedings. 705 ILCS 405/1-5(1) (West 2016). They also have a constitutional right to counsel. *People v. Austin M.*, 2012 IL 111194, ¶ 74. Illinois courts apply the well-known standard outlined in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), to gauge the effectiveness of counsel in juvenile proceedings. *In re Alonzo O.*, 2015 IL App (4th) 150308, ¶ 19. Our duty here is to determine whether trial counsel's failure to call A.Y. as a witness at trial or elicit any testimony about her nonidentification fell below the standard outlined in *Strickland*.

¶ 40    In order for respondent to receive a new trial on the basis of ineffective assistance of counsel, he must show that (1) his counsel's representation fell below an objective standard of reasonableness and (2) a reasonable probability exists that, but for the error, the result would have been different. *In re Charles W.*, 2014 IL App (1st) 131281, ¶ 32. To establish the second prong, respondent must show that his counsel's deficient performance rendered

the result of the trial unreliable or the proceeding fundamentally unfair. *People v. Evans*, 186 Ill. 2d 83, 93 (1999).

¶ 41 We find that respondent has failed to overcome the strong presumption that counsel, as a matter of sound trial strategy, decided not to present A.Y. as a witness at trial in order to deprive the State of an opportunity to drive home the fact the victim's nine-year old daughter sat next to her as she was robbed at gunpoint. See *id.* (to satisfy the deficient performance prong of *Strickland*, the respondent must overcome the strong presumption that any challenged action or inaction may have been the product of sound trial strategy and prove that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the sixth amendment). Counsel would have also run the risk of an in-court identification. Accordingly, respondent has not met the high bar that counsel's performance was deficient in this respect.

¶ 42 Respondent has also not shown that counsel's failure to elicit testimony from Detective Kaldis regarding A.Y.'s nonidentificaton deprived him of a fair trial. See *People v. Smith*, 195 Ill. 2d 179, 188 (2000) (to satisfy the prejudice prong of *Strickland*, the respondent must show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Such testimony, had it been elicited, would have (1) corroborated the victim's testimony that her daughter's "eyes were more so on [the other offender], and my eyes were on the other guy with the gun" and (2) strengthened a positive identification by a witness who was "certain" that her armed robber, who stood two feet away for five to seven minutes, was the same person she picked out of a photo array and identified in court. See *People v. Beals*, 162 Ill. 2d 497, 506-07 (1994); *People v. Romero*, 2018 IL App (1st) 143132, ¶ 130. Given the strength of the victim's eyewitness identification testimony and the trial court's determination that it was credible, respondent has not shown the prejudice necessary to prevail on his claim of ineffective assistance of counsel.

¶ 43                                    CONCLUSION

¶ 44 Accordingly, we affirm.

¶ 45 Affirmed.